The opinion of the court was delivered by
Duncan, 3.
This case is stated with such commendable brevity and perspicuity, that it is only necessary to refer to the paper book, barely stating the dates of the several transactions.
Canan’s first judgment against Clarke was dated the 10th of August, 1798: his fieri facias on this judgment, returned levied on personal property, was to January, 1803. His second judgment the 21st of May, 1807 •. fieri facias to November term, 1807; returned levied on personal property. Davidson’s mortgage from Clarke was executed on the 31st of July, 1798, and recorded on the 20th of August, 1799, to the terrrwif August, 1808. Venditioni exponas issued on both of CVm «72^ judgments, and sale made on both, on the 23d of April, 1808.
Doubtless Canan and Clarke might make any arrangements *345 between themselves which pleased them, if they did not interfere with the rights of others. But there is no honester maxim of the law than this, — Sic útero tuo ut non alienum ledas. Now this arrangement between Canan and Clarke did prejudice the rights of Davidson; for if the personal estate had been applied to the payment of the first lien of Canún, as it was the duty of the sheriff to do, then, the mortgage of Davidson would have come in on the lands. But there is neither justice nor equity in Canan claiming priority of Davidson’s mortgage, prior in date to his judgment, but which lost its priority by not being recorded within six months, and then so managing his levys on the personal property as to take the proceeds from his first judgment, to which it ought to have been applied, to satisfy his second execution, to which it ought not to have been applied. But the argument is, that the goods sold were not the goods levied on by the first execution. If this were made out in proof, which it was not, then another question would arise, the answer to which would be equally fatal to Canan’s claim. From the levy of personal property on his fieri facias to January, 1803, and the levy on his second judgment, which was not obtained until May, 1807, the presumption in law is, that the first judgment was satisfied. If this second execution had been the execution of a third person, the levy being chiefly on perishable articles, grain in the ground and-cattle, it would not stand in the way of a stranger, after such a lapse of time; for it is a wise and just provision of the common law, that where goods levied on by a fieri facias are suffered to remain in the hands of a defendant, a subsequent execution creditor may take them, 4 Dall. 358; and it would have been best to have adhered to this inflexibly. Yet the humaiiity of our judges has laid down a different rule where the levy is on furniture, 4 Dall. 167, 213; a distinction not admitted in the Circuit Court of the United States for this district, nor in the Supreme Court of the United States: a distinction which is contrary to the general policy of the law, and which has been productive of great abuse, as far as the decisions have gone. I am not yet prepared to depai’t from them, but I cannot believe it has been ever carried so far as to keep up the lien for ever, or for an unreasonable time, four years, and put it in the power of a plaintiff and defendant to keep the world at bay, and so cloak up the levy as to shift it from one execution to another, and make it a binding levy at first and then extinguish it, to throw it back on the land to the prejudice of an intervening judgment: and Í think the court widely erred in the law on this subject, when they instructed the jury, “that if Canan had no notice of Davidson’s mortgage until he put it on the record, then he had the first lien against the land, and the land stood bound for the payment of that lien, and he could not be required by the mortgagee to proceed against the personal property: he was at liberty to proceed, or not to proceed, at his pleasure. But if he did so far as to issue a fieri facias and make *346 a levy, he might give indulgence from time to time to the defendant, or might enforce a sale at his option: he was to be the judge in his own case how and when he was to proceed. There existed no privity between Davidson and his assignees and John Canan, by which they could control him in the management either of his judgment or execution. I cannot discover any principle that would, under the circumstances of the case, prevent Canan and Clarke from appropriating the proceeds of the personal estate to which of the two executions in the hands of the sheriff they pleased. Such appropriation is consistent both with law and equity.”
To the first part of this proposition there can be no objection. The mortgagee cannot compel him to make his election, but when he has made his election, he is bound by that election. His debt is satisfied, either wholly or partially, so far as the proceeds of the personal property will go. He has either satisfaction, or the means of satisfaction, in his own hands; his debt at law is satisfied by the levy; and it is against every rule of equity, that having the fund in his own hands, — a fund which he has elected to resort to, — he should relinquish it to the prejudice of a third person’s right.
Canan never could have proceeded to levy the lands by a fieri facias, until he had sold the goods levied on; and then his fieri facias would have been for the residue. By the seizure of the goods the debt was discharged, as far as the value. In fact, the goods levied on are the goods of the sheriff, and until the sale are supposed to be in his possession, and he may maintain trover for them, which is an action of property as well as possession, though a special property may be sufficient.
It is against all law and practice, that a plaintiff can withdraw his levy on personal property, to come in on the proceeds of lands sold by a plaintiff before he has exhausted his levy, and returned his writ to the court, stating how much were the proceeds of the levy.
It is the opinion of the court, that the plaintiff has sustained fully his exceptions to that part of the charge of the court of which he complains.
Judgment reversed, and a venire facias de novo awarded.